IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-2030-CM-TJJ |
| | ) |
| CITY OF LAWRENCE, KANSAS, and | ) |
| | ) |
| JOSHUA DONCOUSE, individually and in his official capacity as a police officer, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

1. This is a complaint for declaratory judgment, injunctive relief, and damages arising from Plaintiff Lisa Smith's wrongful conviction for violation of a protection order under K.S.A. 21-5924(a)(6).

2. Defendant Joshua Doncouse violated Ms. Smith's clearly established rights under the First Amendment when he signed and submitted for prosecution the probable cause affidavit that led to Ms. Smith's conviction.

3. Defendant City of Lawrence, Kansas, failed to provide constitutionally adequate training and supervision to its police officers, which resulted in Ms. Smith's wrongful conviction.

4. Portions of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" are unconstitutional on their face and as applied to expression under the First and Fourteenth Amendments.

### Parties

5. At all material times, Ms. Smith resided in Lawrence, Kansas.

1

6. At all material times, Defendant Doncouse is and was duly appointed as an officer of the police department of the City of Lawrence acting under color of law, including under color of statutes of the State of Kansas and the ordinances, regulations, policies, customs and usages of the City of Lawrence.

7. Defendant City of Lawrence is a municipal corporation and the public agency employer of Defendant Doncouse.

**Jurisdiction and Venue**

8. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of Ms. Smith's rights secured by the federal constitution under color of state law. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9. The relevant acts and omissions occurred in Lawrence, Kansas; therefore, venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b)(2).

**Factual Background**

10. At all material times set forth herein, Ms. Smith and her family lived in Lawrence, Kansas, in a residence located across the street from a residence in which Jonathan Perez lived with his family.

11. The two families have a history of conflict which includes each making criminal allegations against the other.

12. In 2016 or 2017, Ms. Smith accused Perez of sexual misconduct with Ms. Smith's child.

13. In April, 2017, Ms. Smith and Perez each obtained a temporary protection from stalking ("PFS") order against the other, and the matter was scheduled for trial in Douglas County District Court.

14. Since 2002 and at all material times, state law has defined "stalking" to mean "an **intentional** harassment of another person that places the other person in reasonable fear for that person's safety." See 2014 K.S.A. 60-31a02(a); 2016 K.S.A. 60-31a02(a); 2017 K.S.A. 60-31a02(b); and 2018 K.S.A. 60-31a02(d) (emphasis added).

15. Since 2002 and at all material times, state law has defined "harassment" in relevant part to mean "a knowing and intentional course of conduct directed at a specific person that seriously alarms, annoys, torments or terrorizes the person, and that serves no legitimate purpose." See 2014 K.S.A. 60-31a02(b); 2016 K.S.A. 60-31a02(b); 2017 K.S.A. 60-31a02(c); and 2018 K.S.A. 60-31a02(d)(1).

16. Since 2002 and at all material times, state law has defined "Course of conduct" to mean "conduct consisting of two or more separate acts over a period of time, however short, evidencing a continuity of purpose which would cause a reasonable person to suffer substantial emotional distress. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" See 2014 K.S.A. 60-31a02(c); 2016 K.S.A. 60-31a02(c); 2017 K.S.A. 60-31a02(d); and 2018 K.S.A. 60-31a02(d)(2).

17. Since on or before August of 2013, the City of Lawrence's police department has maintained a section of its Administrative Policy and Procedure manual titled "Stalking" ("the stalking policy").

18. The stalking policy defines "stalking" to mean, in part, "**[r]ecklessly** engaging in a course of conduct targeted at a specific person which would cause a reasonable person in the circumstances of the targeted person to fear for such person's safety, or the safety of a member of such person's immediate family, and the targeted person is actually placed in such fear." (emphasis added).

19. The stalking policy does not define "harassment."

20. The staking policy defines "course of conduct" to mean "two or more acts over a period of time, however short, which show evidence of a continuity of purpose. A course of conduct shall not include constitutionally protected activity nor conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person. A course of conduct shall include, but not limited to, any of the following acts or a combination thereof:"

21. The seventh and last of these ostensibly prohibited "acts" is "[a]ny act of communication."

22. The stalking policy defines "[c]ommunication" as a "means to impart a message by any method transmission," and includes a non-exhaustive list about how such communication could be imparted, including by "personally delivering" it.

23. On June 16, 2017, the PFS trial involving Ms. Smith and Perez was had.

24. Ms. Smith was not represented by counsel, but Perez was represented by counsel.

25. Douglas County District Court pro tem judge Branden Smith (no relation to Ms. Smith) granted Perez's request for a final PFS order, and denied Ms. Smith's request for the same.

26. The final PFS order entered against Ms. Smith included the following language: "Defendant shall not make direct or indirect disparaging statements in public regarding plaintiff being a child molestor [sic]."

27. On November 23, 2017, Ms. Smith and her husband arrived at their home in their vehicle and parked in the driveway.

28. When they arrived, Perez and two other persons were outside his home.

29. As Ms. Smith walked from her car to the front door of her residence, she said to her husband, "come inside away from the pedophile."

30. Perez and the two persons with him overheard the statement she made to her husband.

31. Perez called 911, and Defendant Doncouse responded to the scene to investigate.

32. In an affidavit dated November 24, 2019, Defendant Doncouse indicated that a PFS order had previously been entered against Ms. Smith in favor of Perez.

33. In the affidavit, Defendant Doncouse indicated that the PFS order provided that Ms. Smith "shall not make direct or indirect disparaging statements in public regarding plaintiff being a child molester."

34. In the affidavit, Defendant Doncouse also indicated that he had reviewed a video of the incident on which he could hear Ms. Smith referring to Perez as a "pedophile" in a conversation with a her husband as they walked "into the front door" of the Smiths' home.

35. The affidavit resulted in the filing of one misdemeanor count of violation of a protection order under 2017 K.S.A. 21-5924(a)(6) against Ms. Smith on January 10, 2018, in Douglas County District Court Case No. 2018 CR 50.

36. On or about January 24, 2018, Ms. Smith received a summons in the mail commanding her appearance in court to answer the count against her.

37. Ms. Smith had no previous criminal history.

38. After receiving the summons, she turned herself in at the Douglas County Jail. Although she was released on an "own recognizance" bond, she was detained at the jail until she was fingerprinted.

39. Ms. Smith retained counsel, who filed a motion to dismiss the criminal case against her, arguing that the PFS order was an unreasonable, content-based, prior restraint on Ms. Smith's constitutionally protected speech.

40. Ms. Smith's motion to dismiss was denied.

41. At a trial on stipulated facts on August 29, 2018, the parties agreed that the PFS order had been issued, that it was in effect at the time Ms. Smith made the statement, and that it provided that Ms. Smith was prohibited from making disparaging statements in public about Perez being a child molester.

42. The trial court found that that the PFS order did not violate Ms. Smith's constitutional rights and found beyond a reasonable doubt that Smith had violated the order.

43. Ms. Smith was convicted after trial on the stipulated facts and was sentenced to 90 days in jail, but was granted 12 months' probation in lieu of serving any time in custody.

44. Ms. Smith retained counsel to appeal the conviction.

45. Ms. Smith was discharged from probation on August 13, 2019.

46. On September 27, 2019, the Kansas Court of Appeals reversed Ms. Smith's conviction and vacated her sentence. *State v. Smith*, No. 119,919, 2019 WL 4724872, at *8 (Kan. Ct. App. Sept. 27, 2019).

47. In so holding, the Court reasoned that Ms. Smith's statement was protected under the First Amendment because it was not provably false, as no one had ever proved that Perez is not a pedophile, and therefore was not defamatory; that Ms. Smith's statement, made as she was walking away from Perez, would not have caused a reasonable person to fear the sort of physical injury that the PFS statutes are intended to prevent; that the PFS on which Defendant Doncouse relied to sign and file the affidavit was a content-based restriction; and that the State failed to advance a compelling interest to support a content-based restriction targeted at Ms. Smith.

48. On November 21, 2019, Ms. Smith's conviction was expunged.

49. On December 24, 2019, Ms. Smith's counsel in the instant matter delivered a demand letter on her behalf to Defendant City of Lawrence to provide notice that Defendants had violated Ms. Smith's constitutional rights.

50. As of January 17, 2020, Defendant City of Lawrence's police department's Administrative Policy and Procedure manual containing the stalking policy remains effective.

51. As a result of the direct and proximate result of the actions and inactions by Defendants, Ms. Smith suffered the following injuries and damages:

   a. Unlawful deprivation of her liberty; and

   b. Violation of her constitutional rights under the First Amendment to be free from a criminal conviction for constitutionally protected expression.

52. Defendants' conduct was motivated by evil motive or intent or, in the alternative, involved reckless or callous indifference to Plaintiff's federally protected rights.

53. Defendants' conduct has chilled Ms. Smith's First Amendment right to expression.

## **COUNT I**

*42 U.S.C. § 1983 Against Defendant Doncouse*

54. Ms. Smith repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs as though fully set forth here.

55. Defendant Doncouse's conduct violated Ms. Smith's clearly established constitutional right to freedom of expression of which a reasonable person should have known.

56. For the injuries set forth above, Ms. Smith is entitled to compensatory and punitive damages under 42 U.S.C. § 1983 against Defendant Doncouse for violation of her constitutional rights under color of law.

## **COUNT II**

*42 U.S.C. § 1983 Against Defendant City of Lawrence*

57. Ms. Smith repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs as though fully set forth here.

58. The City of Lawrence developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of freedom of speech and expression vested in persons of Lawrence, Kansas, which caused the violation of Ms. Smith's rights.

59. It was the policy or custom, or both, of the City of Lawrence to inadequately supervise and train its police officers, including Defendant Doncouse, about constitutional rights to freedom of speech and expression, thereby failing to prevent the constitutional violation of Ms. Smith's rights.

60. The City of Lawrence did not require appropriate training, in-service training, or re-training of officers to provide them an adequate understanding of persons' rights under the First and Fourteenth Amendments.

61. The City of Lawrence did not provide adequate supervision to prevent Defendant Doncouse from signing and submitting for prosecution the affidavit criminalizing the exercise of Ms. Smith's clearly established constitutional rights.

62. The City's maintenance of a policy since at least 2013 that defines "course of conduct" in part as "any communication" and defines "stalking" in part as engaging in "reckless" conduct, as well as its failure to change such policy despite Ms. Smith's wrongful conviction as outlined both by the Court of Appeals on September 27, 2019, and by Ms. Smith's counsel on December 24, 2019, demonstrates the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by governmental entity employees.

63. For the injuries set forth above, Ms. Smith is entitled to compensatory and punitive damages under 42 U.S.C. § 1983 against Defendant City of Lawrence for violation of her constitutional rights under color of law.

## COUNT III

*Declaratory Judgment*

64. Ms. Smith repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs as though fully set forth here.

65. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "course of conduct" in part as "any communication" violates the First Amendment as applied to the states and their municipalities under the Fourteenth Amendment.

66. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "course of conduct" in part as "any communication" is a content-based restriction on speech both on its face and as applied to Ms. Smith that is not related to furtherance of a compelling governmental interest.

67. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "course of conduct" in part as "any communication" is an invalid time, place, and manner restriction on expression both on its face and as applied to Ms. Smith.

68. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "course of conduct" in part as "any communication" is substantially vague both on its face and as applied to Ms. Smith.

69. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "course of conduct" in part as "any communication" is substantially overbroad both on its face and as applied to Ms. Smith.

70. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "stalking" in part as engaging in a course of conduct "recklessly", rather than only intentionally, violates the First Amendment as applied to the states and their municipalities under the Fourteenth Amendment.

71. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "stalking" in part as engaging in a course of conduct "recklessly", rather than only intentionally, is a content-based restriction on speech both on its face and as applied to Ms. Smith that is not related to furtherance of a compelling governmental interest.

72. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "stalking" in part as engaging in a course of conduct "recklessly", rather than only intentionally, is an invalid time, place, and manner restriction on expression both on its face and as applied to Ms. Smith.

73. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "stalking" in part as engaging in a course of conduct "recklessly", rather than only intentionally, is substantially vague both on its face and as applied to Ms. Smith.

74. The portion of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" which defines "stalking" in part as engaging in a course of conduct "recklessly", rather than only intentionally, is substantially overbroad both on its face and as applied to Ms. Smith.

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter a declaratory judgment that the portions of the City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" described herein are unconstitutional and that the City of Lawrence fails to provide adequate training and supervision of its police officers regarding the right to free speech and expression;

B. Upon proper motion, issue a preliminary and permanent injunction enjoining Defendants from enforcing or threatening to enforce the unconstitutional portions of City of Lawrence's police department's Administrative Policy and Procedure titled "Stalking" and requiring the City of Lawrence to develop and implement adequate training programs for its police officers about the right of free speech;

C. Award Plaintiff compensatory and punitive damages, or in the alternative, nominal and punitive damages, against Defendants pursuant to 42 U.S.C. § 1983;

D. Award Plaintiff reasonable attorneys' fees and costs pursuant to U.S.C. § 1988, as well as pre and post-judgment interest;

E. Allow to Plaintiff such other relief as is just.

    Respectfully submitted,

    /s/Maxwell E. Kautsch
    _____
    Kautsch Law, L.L.C.
    By Maxwell E. Kautsch, #21255
    810 Pennsylvania St., Ste. 207
    Lawrence, KS 66044
    (785) 840-0077
    fax (785) 842-3039
    Attorney for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff requests trial by jury as to all triable issues.

/s/Maxwell E. Kautsch
_____
Kautsch Law, L.L.C.
By Maxwell E. Kautsch, #21255
810 Pennsylvania St., Ste. 207
Lawrence, KS 66044
(785) 840-0077
fax (785) 842-3039
Attorney for Plaintiff

## **DESIGNATION OF PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial.

/s/Maxwell E. Kautsch
_____
Kautsch Law, L.L.C.
By Maxwell E. Kautsch, #21255
810 Pennsylvania St., Ste. 207
Lawrence, KS 66044
(785) 840-0077
fax (785) 842-3039
Attorney for Plaintiff