IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| LISA SMITH,<br><br>**Plaintiff,**<br><br>v.<br><br>CITY OF LAWRENCE, KANSAS, et al.,<br><br>**Defendants.** | Case No. 2:20-cv-02030-HLT |

## MEMORANDUM AND ORDER

Plaintiff Lisa Smith's claims stem from a 2017 protective order. The protective order prohibited Plaintiff from engaging in certain conduct and speech. Police officers investigated her for violating the protective order, and she was charged and convicted. On appeal, the state appellate court deemed the protective order, as applied, an unconstitutional prior restraint on Plaintiff's free-speech rights and reversed her conviction.

Plaintiff now brings claims against the individual police officers (Officer Joshua Doncouse and Sergeant Michael McLaren) and the City of Lawrence, Kansas, under 42 U.S.C. § 1983 for violation of her First and Fourteenth Amendment rights. She generally contends they violated her rights when they investigated the violation of the protective order. Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 13. Because qualified immunity protects Doncouse and McLaren and because Plaintiff fails to plausibly allege that any constitutional violation resulted from the enforcement of a municipal policy or custom, the Court grants the motion and dismisses Plaintiff's claims without prejudice.

I. **BACKGROUND**[1]

The facts in this case are well established and relate back to a longstanding conflict between Plaintiff and her neighbor Jonathan Perez. At all times material to this case, Plaintiff and Perez lived across the street from each other in Lawrence, Kansas. Doc. 9 ¶ 16. The two had a history of conflict, which included leveling criminal allegations at one another. *Id.* at ¶ 17. In 2016 or 2017, Plaintiff accused Perez of sexual misconduct with Plaintiff's child.[2] *Id.* at ¶ 18. These allegations led Perez to seek court intervention, and, in June 2017, the District Court of Douglas County, Kansas granted Perez's request for a Protection from Stalking ("PFS") Order against Plaintiff. *Id.* at ¶¶ 19-20. In addition to the standard provisions, the PFS Order purported to prohibit Plaintiff from "mak[ing] direct or indirect disparaging statements in public regarding [Perez] being a child molestor [sic]." *Id.* at ¶ 21; Doc. 9-3 at 2. The PFS Order advised that violation of its provisions "may constitute . . . violation of a protective order as provided in K.S.A. [§] 21-5924," among other offenses. Doc. 9-3 at 2.

A little over five months later, on November 23, 2017, Plaintiff and her husband arrived home and pulled into their driveway. Doc. 9 ¶ 23. Perez and two other individuals were outside his home. *Id.* at ¶ 24. As she was walking from her car to the front door, Plaintiff—noticing Perez outside—instructed her husband to "come inside away from the pedophile." *Id.* at ¶ 25. Perez and the two other individuals overheard Plaintiff's statement and Perez called 911 to report that Plaintiff was harassing him. *Id.* at ¶¶ 26-27.

Doncouse, an officer with the Lawrence Police Department ("LPD"), responded to the scene to investigate. *Id.* at ¶¶ 5, 27. Pursuant to LPD policy, Doncouse drafted an affidavit detailing

---

[1] This background accepts as true Plaintiff's well-pleaded factual allegations and construes those allegations in the light most favorable to Plaintiff.

[2] No charges were ever filed against Perez in connection with these allegations.

the incident and his investigation. *Id.* at ¶¶ 14, 28; Doc. 9-2. The affidavit, dated the day after the incident, states that Doncouse reviewed video of the incident in which he could hear Plaintiff refer to Perez as a "pedophile." Doc. 9 ¶ 28. The affidavit also states that Perez showed Doncouse a copy of the PFS Order and that Plaintiff violated that order. *Id.* at ¶ 29. Consistent with LPD policy, Doncouse's affidavit was reviewed and notarized by the supervisor on duty, McLaren, who is a sergeant with the LPD. *Id.* at ¶¶ 6, 35; Doc. 9-2. The notarized affidavit was then submitted to the district attorney's office for prosecution. Doc. 9 ¶ 36.

On January 10, 2018, Plaintiff was charged with one misdemeanor count of violation of a protective order under K.S.A. § 21-5924(a)(6).[3] *Id.* at ¶ 37. Plaintiff was ultimately found guilty of that offense in Douglas County District Court on August 10, 2018. *Id.* at ¶ 43. Following a timely appeal, however, the Kansas Court of Appeals found that the PFS Order, as applied, was an unconstitutional prior restraint on Plaintiff's free-speech rights, and thus reversed Plaintiff's conviction and vacated her sentence. *Id.* at ¶ 47; Doc. 9-5. Following that decision, Plaintiff filed this lawsuit on January 17, 2020, asserting federal claims under 42 U.S.C. § 1983 for violation of her First and Fourteenth Amendment rights against Doncouse, McLaren, and the City of Lawrence, Kansas (the "City").

## II.     STANDARD

Courts will dismiss a cause of action under Rule 12(b)(6) in two circumstances. First, dismissal is warranted where an issue of law precludes recovery. *Neitzke v. Williams*, 490 U.S.

---

[3] In her operative complaint, Plaintiff pleads that she was charged with violation of a protective order under K.S.A. § 21-5924(a)(6). Doc. 9 ¶ 37; *see also* Doc. 9-5 at 7 (stating in the Kansas Court of Appeals decision that Plaintiff was prosecuted under K.S.A. § 21-5924 for violation of a protective order). But, at points throughout Plaintiff's briefing, she contradicts her pleading and the exhibits attached thereto by stating that she was charged with stalking, which is a separate offense arising from a separate statute (i.e., K.S.A. § 21-5427). Plaintiff's attempt to conflate these separate charges complicated resolution of this motion and demonstrates a fundamental misapprehension regarding the offense with which she was charged. The Court discusses this misunderstanding further in Part III, *infra*.

3

319, 326 (1989). Second, dismissal is likewise appropriate where the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if its factual allegations allow a court to draw the reasonable inference that the opposing party is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although courts must accept well-pleaded factual allegations as true, this obligation does not extend to legal conclusions or to "threadbare recitals of the elements of the cause of action." *Id.* at 678-79.

### III.   ANALYSIS

Federal law recognizes a private cause of action against any person who, under color of state law, "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 thus operates as a procedural device through which a party may seek relief for the deprivation of a constitutional right. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 615-20 (1979). Here, Plaintiff invokes § 1983 to assert claims for the alleged violation of her First and Fourteenth Amendment rights.

Plaintiff asserts her claims against Doncouse and McLaren in both their individual and official capacities and against the City. The Court first addresses the individual-capacity claims against Doncouse and McLaren. Second, because a § 1983 claim against an individual defendant in his official capacity is tantamount to a claim against the municipal entity itself, *see Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985), the Court addresses in tandem the official-capacity claims against Doncouse and McLaren and the claim against the City.

### A. Individual-Capacity Claims

Defendants raise multiple arguments in favor of dismissal of the individual-capacity claims against Doncouse and McLaren. First, Defendants argue that Doncouse and McLaren are protected from liability by absolute quasi-judicial immunity because they were merely enforcing the facially-valid PFS Order. Doc. 13 at 8-11. Second, Defendants argue that, even if not absolutely immune, Doncouse and McLaren are entitled to qualified immunity because they did not engage in conduct that violated a clearly-established constitutional right. *Id.* at 11-15. For the following reasons, the Court agrees that qualified immunity shields Doncouse and McLaren from Plaintiff's individual-capacity claims.[4]

Qualified immunity protects public officials from civil liability provided their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 23 (2009). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations omitted). Once an official has raised a qualified-immunity defense, the plaintiff bears the burden to show that (1) the official violated a statutory or constitutional right, and (2) the right was "clearly established" at the time of the conduct at issue. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). The order in which these two prongs are evaluated is within the Court's discretion. *Id.*

Here, the Court exercises its discretion to consider the second qualified-immunity prong first.[5] A right is "clearly established" for qualified-immunity purposes where it is sufficiently clear

---

[4]   Because the Court resolves Plaintiff's individual-capacity claims on the basis of qualified immunity, the Court does not address the parties' arguments as to absolute immunity.

[5]   The Court notes that, although Plaintiff attempts to characterize Defendants' focus on the second prong in their briefing as effectively a "concession" of the first (i.e., a concession that Doncouse and McLaren violated Plaintiff's constitutional rights as alleged, *see* Doc. 14 at 13), this is not the case. Defendants merely point out that it is within the Court's discretion to consider the second prong first—as the Court does here—and that a

that every reasonable official would have understood his conduct to have violated that right. *Mullenix*, 136 S. Ct. at 308. To satisfy this step, courts do not require a case "directly on point," but the plaintiff must identify existing precedent—either controlling authority or "a robust 'consensus of cases of persuasive authority'"—placing the constitutional question "beyond debate." *al-Kidd*, 563 U.S. at 741-42. To do that, the precedent "must be 'particularized' to the facts of the case" before the court. *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (noting that courts should not define "clearly established law" at "a high level of generality").

The Court finds that Plaintiff has not met her burden to show that the right at issue was "clearly established" at the time of the alleged unconstitutional conduct. In this case, Plaintiff alleges that her constitutional right to freedom of expression was violated when Doncouse signed, McLaren notarized, and one (or both) of them submitted for prosecution the affidavit alleging that Plaintiff violated the PFS Order by stating "pedophile" in a non-threatening manner. Doc. 9 ¶ 2; Doc. 14 at 13. The pertinent inquiry for the Court under the second prong, then, is whether every reasonable official would have understood that by signing, notarizing, and submitting the affidavit, they were violating the First Amendment because the PFS Order constituted an improper content-based restriction on Plaintiff's free-speech rights.

The answer to that question is no. As Defendants point out in their briefing, it took multiple levels of court review to determine the constitutionality of the PFS Order. Given that trained attorneys disagreed on this legal issue, the constitutional question here was far from "sufficiently clear."

---

failure by Plaintiff to satisfy either prong will result in a finding of qualified immunity *See al-Kidd*, 563 U.S. at 735; *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

Curiously, in her response, Plaintiff relies on the LPD's administrative policy as to stalking ("Stalking Policy") (*see* Doc. 9-1) to establish that the constitutional right was clearly established. Plaintiff argues that the Stalking Policy accurately recites the elements of a charge of stalking and "correctly reflects the First Amendment rights of persons accused of stalking." Doc. 14 at 16-17. Thus, Plaintiff reasons that "[a] reasonable police officer would have understood that failing to apply the elements of the Stalking Policy before concluding a crime had been committed violated clearly established law." *Id.* at 17. But Plaintiff was neither investigated for nor charged with the crime of "stalking" (defined at K.S.A. § 21-5427), which—as the name indicates—is the offense addressed by the Stalking Policy. Rather, Plaintiff was investigated for and charged with violation of a protective order (the PFS Order) under K.S.A. § 21-5924(a)(6). These are two distinct offenses, defined under distinct statutes, with distinct requirements and distinct consequences. The Stalking Policy thus has no applicability to the rights and allegations at issue in this case and does not put the pertinent constitutional question "beyond debate."

Because Plaintiff has not satisfied her burden, the Court finds that qualified immunity shields Doncouse and McLaren from individual liability. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (holding that if a plaintiff fails to satisfy either prong of the qualified-immunity analysis, the court must grant the defendant qualified immunity). The Court thus dismisses the individual-capacity claims against them without prejudice under Rule 12(b)(6).[6]

---

[6] Because the Court resolves the qualified-immunity issue on the second prong, the Court does not address the first prong—whether the alleged conduct here constitutes a constitutional violation. But the Court struggles to understand how the facts of this case constitute a First Amendment violation by these individual defendants.

### B. Municipal and Official-Capacity Claims

The Court next addresses Plaintiff's § 1983 claims against the City and against Doncouse and McLaren in their official capacities.[7] Again, as discussed, an official-capacity claim against a municipal official is merely another way of pleading an action against the entity itself. *See Graham*, 473 U.S. at 165-66 (noting that a suit against a municipal officer in his official capacity "generally represent[s] only another way of pleading an action against an entity of which [the] officer is an agent" and, therefore, is not against the official himself). The following analysis thus applies equally to Plaintiff's claim against the City and her official-capacity claims.

Where a plaintiff seeks to establish municipal liability under § 1983, she must allege that the constitutional violation stems from the enforcement of a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that "it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983"). A challenged practice is deemed a "municipal policy or custom" for purposes of § 1983 if it is a "formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013). Courts have held that § 1983 municipal liability may only be imposed when the enforcement of a such a policy or custom was the "moving force" behind the violation of federally-protected rights. *See Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997); *Monell*, 436 U.S. at 694.

---

[7] In their briefing, Defendants argue that, because Plaintiff fails to state a claim against Doncouse and McLaren, her claims against the City must also fail. Doc. 13 at 15-16; Doc. 16 at 6. But the Court resolved the individual-capacity claims on the second prong of the qualified-immunity analysis (not the first prong), so it must still analyze whether the suit may proceed as against the City. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782-83 (10th Cir. 1993) (noting that the mere fact that a defendant official is found to be protected from personal liability by qualified immunity because he did not violate clearly-established federal law does not protect the municipality from liability).

Here, Plaintiff premises her municipal liability claim on an alleged failure to train and supervise. Plaintiff contends that the City fails to adequately train and supervise its police officers regarding application of the Stalking Policy, which has resulted in a custom of misinterpreting and misapplying that policy and which directly caused the alleged violation of Plaintiff's constitutional rights. Doc. 9 ¶¶ 64-71; Doc. 14 at 21. In response, Defendants argue that Plaintiff has not pleaded facts showing any causal link between the Stalking Policy and the alleged constitutional violation. Doc. 13 at 16-17.

The Court agrees with Defendants. In order to find municipal liability under § 1983, the Court has to find a causal connection between the Stalking Policy and the alleged constitutional violation. Here, the facts do not plausibly establish any such connection. The flawed premise underlying Plaintiff's municipal claim again goes back to her misunderstanding regarding the nature of the offense with which she was charged. Plaintiff was never investigated for, or charged with, stalking. Rather, the facts show that Doncouse investigated Plaintiff for the offense of violation of a protective order, which is a distinct offense not governed by the Stalking Policy. The facts do not show that Doncouse took any action in this case because of, or in accordance with, the Stalking Policy. Nor was McLaren's conduct in notarizing Doncouse's affidavit based on or performed in accordance with the Stalking Policy. Therefore, even accepting as true Plaintiff's allegation that Doncouse and McLaren were not adequately trained or supervised with respect to the Stalking Policy, the facts do not plausibly establish any connection between that alleged failure to train and the constitutional violation that Plaintiff alleges here. Plaintiff's § 1983 claim against

the City and her official-capacity claims against Doncouse and McLaren thus fail to state a claim for relief. The Court dismisses those claims without prejudice.[8,9]

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendants' Motion to Dismiss (Doc. 13) is GRANTED. Plaintiff's claims against Defendants under 42 U.S.C. § 1983 are DISMISSED WITHOUT PREJUDICE. This case is closed.

IT IS SO ORDERED.

Dated: June 24, 2020                              /s/ *Holly L. Teeter*
                                                  HOLLY L. TEETER
                                                  UNITED STATES DISTRICT JUDGE

---

[8] Dismissal of Plaintiff's official-capacity claims against Doncouse and McLaren is also justified because these claims are duplicative of her claim against the City. Again, the Supreme Court has held that a suit against a municipal official in his official capacity is tantamount to a suit against the municipal entity itself. *See Graham*, 473 U.S. at 165-66. Therefore, where a § 1983 plaintiff chooses to sue both a municipality and its municipal officials in an official capacity, courts routinely dismiss the official-capacity claims as "duplicative" or "redundant" of the claim against the municipal entity. MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS & DEFENSES § 6.05 (4th ed. 2019); *see also Doe v. Douglas Cty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991) (in dismissing "redundant" official-capacity claim, stating "[a]lthough there is no Tenth Circuit decision on point, dismissal of plaintiff's redundant claim is warranted as a matter of judicial economy and efficiency"); *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 131-32 (D.N.J. 2017) (dismissing claims against police chief in his official capacity as duplicative of claims against municipality); *Comer v. Hous. Auth. of City of Gary, Ind.*, 615 F. Supp. 2d 785, 789 (N.D. Ind. 2009) ("[S]ince municipalities can be sued directly for damages and injunctive or declaratory relief, there is no need to sue local officials in their official capacity in addition to their local government units.").

[9] The Court notes that, in her operative complaint, Plaintiff also references the LPD's administrative policy as to affidavits. But Plaintiff fails to identify any constitutional issues with that policy, and, indeed, does not develop any facts or argument indicating how the enforcement of that policy gave rise to the alleged constitutional violation here. So, that policy also fails to state a plausible § 1983 claim.